FILED

January 24, 2018

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 7:15 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Carlotta Davis, | ) | |
| Employee, | ) | Docket No. 2017-06-0931 |
| v. | ) | |
| GCA Services Group, Inc. | ) | |
| Employer, | ) | State File No. 20334-2017 |
| And | ) | |
| Indemnity Ins. Co. of North America, | ) | |
| Carrier. | ) | Judge Joshua D. Baker |

---

## AMENDED EXPEDITED HEARING ORDER FOR TEMPORARY PARTIAL DISABILITY BENEFITS

---

This claim came before the Court on November 30, 2017, for an Expedited Hearing. The Court entered an order holding Ms. Davis would likely prevail in proving the compensability of her injury at a hearing on the merits. The Court awarded her temporary partial disability benefits but denied her claim for mileage reimbursement.[1] GCA Services Group, Inc. filed a motion to reconsider the order. The Court grants the motion and enters the following amended order granting Ms. Davis a reduced amount of permanent partial disability benefits and denying her claim for mileage reimbursement.

### History of Claim

Ms. Davis answered a cell-phone call from her supervisor at GCA, David Parker, while using a floor-scrubber. When the conversation became heated, Ms. Davis fell as she hurriedly pushed the floor-scrubber and its electrical cord aside to exit the room to speak privately. She suffered right shoulder and head contusions, a cervical strain, a lumbosacral injury and a chipped tooth.

---

[1] Although the parties disputed medical benefits in the Dispute Certification Notice, GCA agreed to pay for treatment Ms. Davis received for "tooth number 14." Ms. Davis acknowledged GCA paid the remaining medical bills.

1

Ms. Davis testified she pushed the equipment and cord aside and "turned around and slipped up and fell." In deposition testimony, however, Ms. Davis said, "David was the cause of me falling because he's yelling in my ear and I'm trying to . . . go outside to talk to him." At the hearing, she said, "I don't know if it was the cord or the damp floor. I don't know which one it was for sure."

Initially, GCA accepted the claim but later denied benefits, asserting the injury was idiopathic. Ms. Davis chose Concentra from a panel and received treatment from Dr. Chae Ko. His March 21 restrictions permitted lifting, pushing, or pulling up to ten pounds frequently for six hours per day. The restrictions, although accommodated, limited Ms. Davis' eight-hour workday to only six hours. A wage statement and paychecks introduced at the hearing indicated Ms. Davis earned an average weekly wage of $360.53 before her injury and $291.19 post-injury. Concentra provided medical care to Ms. Davis until referring her to a specialist on April 21. In response, a legal assistant for GCA's counsel mailed Ms. Davis a panel of physicians on May 2.

GCA introduced a separation notice showing Ms. Davis' termination on May 31 for "lack of work" and for being "out of compliance with her worker's [sic] comp claim" because she had not chosen a physician from the panel. Mr. Parker testified that GCA keeps just "twenty percent" of employees after the school year, employing only experienced floor cleaners in summer. Ms. Davis acknowledged she received unemployment benefits after May 31.

Ms. Davis returned a signed panel on June 21, and GCA provided authorized treatment with neurologist Dr. Robert Weiss. Dr. Weiss reported on July 12 that he had no treatment to offer Ms. Davis and could not explain her symptoms in light of her normal MRI. He further concluded that Ms. Davis sustained no permanent impairment from her injury and needed no restrictions.

**Findings of Fact and Conclusions of Law**

Ms. Davis requested temporary disability benefits and mileage reimbursement. Ms. Davis has the burden to prove the essential elements of her claim, but to prevail at an expedited hearing she need only present sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

In addition to arguing that Ms. Davis' injury is idiopathic, GCA contended that her delay in selecting Dr. Weiss from a physician panel constituted noncompliance with medical care. GCA reasoned that due to her noncompliance, she is not due temporary partial disability benefits. GCA asserted Ms. Davis is not entitled to mileage reimbursement because her home was within a fifteen-mile radius of the physician's office. For the reasons provided below, the Court holds Ms. Davis suffered a

2

compensable injury and can recover accrued temporary partial disability benefits. The Court denies her claim for mileage reimbursement.

An idiopathic injury has "unexplained origin or cause, and generally does not arise out of the employment unless 'some condition of the employment presents a peculiar or additional hazard.'" *Frye v. Vincent Printing Co., et al.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 34, at *11 (Aug. 2, 2016) (internal citation omitted). "Cause" in this context is not "proximate cause" as used in the law of negligence; rather, "cause means that the accident originated in the hazards to which the employee was exposed as a result of performing his or her job duties." *Id*. at *12. Further, Tennessee courts "have consistently held that an employee may not recover for an injury occurring while walking unless there is an employment hazard, such as a puddle of water or a step, in addition to the employee's ambulation." *Wilhelm v. Krogers*, 235 S.W.3d 122, 128-129 (Tenn. 2007).

Ms. Davis described a confluence of work-related events that explained her fall, including moving equipment and its electrical cord on a newly-cleaned floor while in an emotional, "agitated" state due to a contentious phone call with her supervisor. Based on the standards set forth above, the Court finds that Ms. Davis' injury is not idiopathic and that the accident originated in the hazards of her employment. Thus, the Court holds Ms. Davis suffered a compensable injury.

Having found compensability, the Court considers Ms. Davis' entitlement to temporary partial disability benefits. To establish entitlement to temporary disability benefits, Ms. Davis must show a compensable injury disabled her from working; a causal connection exists between her injury and inability to work; and the duration of her disability. *Jones v. Crencor*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Compensation for temporary partial disability is sixty-six and two-thirds percent of the "difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition." Tenn. Code Ann. § 50-6-207(2) (2017). However, "[i]f the injured employee refuses to . . . accept the medical or specialized medical services that the employer is required to furnish under this chapter, the injured employee's right to compensation shall be suspended and no compensation shall be due and payable while the injured employee continues to refuse." *Id*. at 50-6-204(d)(8).

The Court holds GCA must pay Ms. Davis temporary partial disability benefits from March 21 through May 31. Concentra's records show Ms. Davis' compensable injury disabled her from working her typical eight-hour workday beginning March 21. Testimony demonstrated that GCA accommodated her restrictions by employing her for only six hours per day until it terminated her on May 31 due to "lack of work." Dr. Weiss reported on July 12 that Ms. Davis could work without restrictions. The Court finds Ms. Davis established she is likely to prevail at a hearing on the merits in

3

demonstrating she suffered a compensable injury that caused her partial disability from March 21 through May 31.

However, the Court holds Ms. Davis is not owed temporary disability benefits after May 31 because she failed to timely select a panel physician. The Court finds Ms. Davis received the panel shortly after it was mailed on May 2. While it was reasonable for her to take time to decide her selection, waiting more than four weeks was unreasonable and constituted a refusal to accept medical care after May 31. *See* Tenn. Code Ann. § 50-6-204(d)(8).

Based on her wage statement and post-injury paychecks, the Court finds Ms. Davis earned an average weekly wage of $360.53 prior to the injury and $291.19 post-injury until her termination on May 31. Sixty-six and two thirds of that $69.34 difference is $46.23, or $6.60 per day, which is owed for ten weeks and one day from March 22 to May 31, totaling $469.80 in temporary partial disability benefits.

Lastly, the Court turns to whether Ms. Davis is entitled to mileage reimbursement. For mileage, an injured worker is owed mileage reimbursement when she travels "to an authorized medical provider or facility located outside a radius of fifteen (15) miles from the insured worker's residence or workplace." Tenn. Code Ann. § 50-6-204(a)(6)(A). Ms. Davis testified that Concentra, the authorized provider, was roughly eight miles from her home. Because Concentra is located within a fifteen-mile radius of Ms. Davis' home, she is not due mileage reimbursement.

It is **ORDERED** as follows:

1. GCA shall pay Ms. Davis $469.80 in temporary partial disability benefits.

2. The Court denies Ms. Davis' claim for mileage reimbursement.

3. **This matter is set for a Scheduling Hearing on Monday, February 5, 2018, at 9:30 a.m. (CST).** You must call 615-741-2113 or toll-free 855-874-0474 to participate in the Hearing. Failure to call may result in a determination of issues without your further participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please

4

contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED ON JANUARY 24, 2018.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits
1. Medical Records
2. Affidavit of Carlotta Davis
3. Separation Notice
4. Wage Statement and Earnings
5. Mileage Reimbursement Request
6. Records from Nashville General Hospital
7. Emails

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Pre-Hearing Witness and Exhibit List

**CERTIFICATE OF SERVICE**

       I certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on January 24, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Carlotta Davis, Self-represented Employee | X | | X | 326 Tanglewood Court Nashville, TN  37211 Carlotta984@gmail.com |
| Allen Callison, Employer's Attorney | | | X | acallison@chartwell.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov